## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **HARVEY KENDRICK,** <br> 2301 Penbrook Circle <br> Landover, MD 20785 <br><br> Plaintiff, <br><br> v. <br><br> **JOHN E. POTTER,** <br> **POSTMASTER GENERAL** <br> **U.S. POSTAL SERVICE** <br> 475 L'Enfant Plaza, SW <br> Washington, DC 20260 <br><br> Defendant. | Civil Action No. _____ |

## COMPLAINT
(EMPLOYMENT DISCRIMINATION: 442 CIVIL RIGHTS-EMPLOYMENT)

Comes now Plaintiff, Harvey Kendrick, and by way of Complaint against the

Defendant, say as follows:

### NATURE OF THE ACTION

1. This action is brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., for race discrimination and retaliation in federal employment.

2. This action is also brought under the Rehabilitation Act of 1973, 29 U.S.C. § et seq., for disability discrimination and retaliation in employment.

3. This action is further brought for violations of the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., and regulations promulgated thereunder, 29 C.F.R. § 825.100 et seq.

## JURISDICTION

SUBJECT MATTER JURISDICTION

4. The Court enjoys subject matter jurisdiction over this dispute as it exclusively concerns a federal question, and claims presented under federal law.  28 U.S.C § 1331.

5. The Court has been granted jurisdiction over this matter pursuant to 42 U.S.C § 2000e-5(f)(3) and 29 CFR § 1614.407.

6. Plaintiff's claims are properly before this Court, as he has exhausted his administrative remedies through the federal sector EEO complaint process. 29 CFR § 1614.100 *et seq.*  Mr. Kendrick filed a Formal Complaint of Discrimination with the U.S. Postal Service on April 21, 2005.  After investigating the Complaint, the U.S. Postal Service issued its Final Agency Decision on December 21, 2005.  Plaintiff files the instant action within 30 days of his receipt of the Final Agency Decision, in accordance with 29 CFR 1614.310(a).

PERSONAL JURISDICTION AND VENUE

7. This Court has jurisdiction over the Defendant pursuant to 42 U.S.C. §§ 2000e-5(f)(3), 2000e-16(c).

8. The United States District Court for the District of Columbia is the proper venue for this action since the Defendant U.S. Postal Service is headquartered

in the District of Columbia and has substantial and continuous contacts with the District of Columbia. Moreover, Plaintiff's personnel records are maintained at the Postal Service's Brentwood facility in Washington, D.C.; thus, this Court is the proper venue for this action pursuant to 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

9. The Plaintiff, Harvey Kendrick is an individual who is, and all times relevant herein, was a resident of the State of Maryland. At all times relevant herein, Mr. Kendrick was an employee of the Defendant U.S. Postal Service within the meaning of 42 U.S.C. § 2000e(f).

10. John E. Potter is the Postmaster General of the U.S. Postal Service and is named here as Defendant in his official capacity as head of the U.S. Postal Service Agency. The U.S. Postal Service is an independently-established, federal governmental agency and an employer, as defined by 42 U.S.C. §§ 2000e(b), 2000e-16 with over 500 employees. The U.S. Postal Service is headquartered at 475 L'Enfant Plaza, S.W., Washington, D.C. 20260.

## FACTUAL ALLEGATIONS

11. Plaintiff Harvey Kendrick is an African-American male who was employed by the U.S. Postal Service (hereinafter "USPS") as a full-time Laborer Custodian, PS-3 at the Calvert DDC located in Hyattsville, Maryland.

12. Mr. Kendrick. began working for the USPS in 1994 and all times relevant herein Mr. Kendrick's immediate supervisor was John Bagley, and his manager was William Katz.

13. In or about January 2004, Mr. Kendrick was diagnosed with bilateral Carpal Tunnel Syndrome, Cervical Radiculopathy, tendonitis and arthritis.

14. These conditions were caused and/or exacerbated by the physical labor of his job and are now permanent.

15. As a result disabling conditions, Mr. Kendrick cannot perform certain non-essential functions of his job, including but not limited to: strenuous or repetitive manual tasks, hold objects for significant periods of time, or engage in heavy lifting or bending.

16. His disability substantially limits major life activities including but not limited to: performing manual tasks and yard work, washing dishes, cleaning, driving, cooking, feeding and dressing himself, caring for himself and his children, and working.

17. Mr. Kendrick's manager William Katz became aware of his disability in February 2004, when Mr. Kendrick was unable to work and received workers'

compensation.

18. Mr. Kendrick returned to work in late April 2004; however, he was not given limited or light duty work, but given his regular work of lifting garbage cans, moving desks, etc.

19. Mr. Katz knew the nature of Mr. Kendrick's conditions and limitations caused by his disability through medical documentation that he provided him in support of his requests for light duty, FMLA leave and workers' compensation.

20. Mr.Katz also knew that the Office of Workers Compensation Program (OWCP) approved payments of workers' compensation benefits to Mr. Kendrick due to his conditions from February 21, 2004 to April 29, 2004, and that his conditions were ongoing.

21. Mr. Kendrick applied for FMLA leave due to his health conditions in or around May 6, 2004, but received no response. When Mr. Kendrick asked about his leave request, John Bagley told him that the Postal Service lost his paperwork and to submit another request.

22. Mr. Kendrick submitted his second FMLA leave request in or around November 2004 and to date, has never received a response.

23. On or around November 30, 2004, Mr. Kendrick's physical conditions worsened and he could no longer perform his job. His doctor advised him to discontinue work in his current position. Mr. Kendrick informed Mr. Bagley of his inability to continue working and applied for workers' compensation again with OWCP. Mr. Kendrick supplied medical verification of his disabling condition and need for

absence from work to Mr. Bagley.

24. While out from work because of his disability, Mr. Kendrick received a Notice of Proposed Removal dated February 10, 2005. Upon information and belief, Mr. Kendrick prepared the Notice, which stated that Mr. Kendrick's removal was being proposed because he had not provided documentation regarding his medical absences.

25. Mr. Kendrick provided medical documentation to the USPS in February 2005. Mr. Katz, however, told him that he provided it "too late".

26. While working at the USPS, Mr. Kendrick experienced humiliating comments, yelling, and degrading jokes (particularly about his genital size). Mr. Katz also frequently addressed Mr. Kendrick as "you" rather than by his name.

27. Mr. Katz also expressed animus toward Mr. Kendrick because of his disability. Mr. Katz, for instance, did not provide Mr. Kendrick limited duties to accommodate his disability, and did not permit Mr. Kendrick sufficient time to submit requested medical documentation. Mr. Katz also made disparaging statements to Mr. Kendrick about his disability, including, in word or substance: "what good are you…you can't even lift a loaf of bread!"

28. Upon information and belief, Caucasian disabled employees were provided reasonable accommodations for their disabling conditions.

## COUNT I
### DISABILITY DISCRIMINATION

29. Plaintiff repeats and realleges the allegations of paragraphs 1 through 28, inclusive, and incorporates the same by reference as though set forth fully herein.

30. Mr. Kendrick is a qualified individual with a disability. He has physical impairments, which substantially limit major life activities within the meaning of 501 of the Rehabilitation Act of 1973. See Complaint §§ 15-18.

31. Mr. Kendrick was qualified for the position of Custodian/Laborer and had performing adequately in that position for 13 years.

32. Mr. Kendrick requested a reasonable accommodation for his disability in the form of a light duty assignment in April 2004 and for leaves of absence in May and November 2004.

33. The USPS failed to provide Mr. Kendrick a reasonable accommodation for his disability. The USPS did not provide Mr. Kendrick with a light-duty position or light-duty responsibilities, nor did it grant his requests for leaves of absence from work.

34. Providing these reasonable accommodations would not have placed an undue hardship on the USPS or its operations.

35. The USPS' failure to provide Mr. Kendrick a reasonable accommodation for his disability violated The Rehabilitation Act.

36. The USPS terminated Mr. Kendrick's federal employment on March 11, 2005.

37. Since on or about February 2004, the USPS and Mr. Katz had a record of Mr.

Kendrick's disability.

38. The USPS and Mr. Katz regarded Mr. Kendrick as disabled.

39. The USPS terminated Mr. Kendrick due to his actual disability, a record of his disability, and perceived disability in violation of The Rehabilitation Act.

40. The USPS, at all times relevant hereto, had actual and constructive knowledge of the conduct of its managerial employees described herein.

41. Plaintiff is informed and believes, and based thereon alleges, that in addition to the practices enumerated above, Defendant, and their agents, have engaged in discriminatory practices against him which are not yet fully known.  At such time as said discriminatory practices become known to him, Plaintiff will seek leave of court to amend this Complaint in that regard.

## COUNT II
### FAMILY AND MEDICAL LEAVE ACT VIOLATIONS

42. Plaintiff repeats and realleges the allegations of paragraphs 1 through 40, inclusive, and incorporates the same by reference as though set forth fully herein.

43. Prior to his requests for FMLA leave in May 2004 and November 2004, Mr. Kendrick worked at least 12 months and over 1,250 hours.

44.  From at least February 2004 to present, Mr. Kendrick has had a serious health condition within the meaning of the FMLA, 29 CFR §§ 825.114, 115(b). See Complaint ¶¶ 15-18

45. Mr. Kendrick was, therefore, eligible and entitled to medical leave for his serious

health condition, per 29 U.S.C. § 2612 (1)(c).

46. Mr. Kendrick's absences from work relating to his serious health condition were FMLA-qualifying absences and triggered his entitlement to 12 workweeks of unpaid leave.

47. The USPS violated the FMLA by denying Mr. Kendrick unpaid leave up to his 12-week entitlement.

48. The USPS did not permit Mr. Kendrick at least 15 days to provide additional medical documentation, in violation of 29 CFR § 825.308(d).

49. The USPS terminated Mr. Kendrick in violation of the FMLA by failing to provide him job security as required by the Act.

50. The USPS, at all times, relevant hereto, had actual and constructive knowledge of the conduct of its management employees described herein.

51. Plaintiff is informed and believes, and based thereon alleges, that in addition to the practices enumerated above, Defendant, and its agents, have engaged in other violations of the FMLA that are not yet fully known. At such time as said practices become known to him, Plaintiff will seek leave of court to amend this Complaint in that regard.

## COUNT III
### RETALIATION

52.   Plaintiff repeats and realleges the allegations of paragraphs 1 through 50, inclusive, and incorporates the same by reference as though set forth fully herein.

53.   Mr. Kendrick exercised his rights under the FMLA and Rehabilitation Act by requesting leaves of absence informally at various times, and formally in May 2004 and November 2004, and by submitting to the Postal Service FMLA leave request forms and supporting medical certification.

54.   Mr. Kendrick engaged in protected activity when he exercised his right under the Rehabilitation Act to request a reasonable accommodation in the form of a light-duty assignment in April 2004, because of his disabling conditions.

55.   Mr. Kendrick opposed practices that he reasonably believed were motivated by his disability (denial of reasonable accommodation and denials of leave) and motivated by his race (Agency denial of reasonable time to provide requested medical documentation on or about January 24, 2005 by William Katz). He also informed Mr. Katz, when he denied him additional time to supply supplemental medical documentation, that Mr. Kendrick believed his actions were racist. These activities are protected by § 704 0f Title VII.

56.   William Katz was aware of these protected activities because Mr. Kendrick personally discussed getting a light-duty assignment with Mr. Katz in May 2004 and spoke directly with him on or about January 24, 2005 as described above. In addition, Mr. Katz was involved in the decisions regarding Mr. Kendrick leave

requests. Mr. Katz also monitored Mr. Kendrick's leaves of absence as evidenced by the proposed removal he drafted.

57. Mr. Kendrick engaged in conduct protected by the FMLA, including but not limited to taking FMLA-qualifying absences from work between of February 2004 and April 2004 and from December 2004 until his termination in March 2005. Mr. Kendrick further engaged in protected conduct by requesting FMLA leave in May 2004 and November 2004. The USPS, through Mr. Katz and/or Mr. Bagley, was aware of this protected activity.

58. The USPS engaged in the following adverse personnel actions against Mr. Kendrick: denial of light duty work/position; denial of reasonable accommodation; denial of FMLA leave and termination.

59. There is a causal nexus between the adverse personnel actions alleged above and Mr. Kendrick's protected activities.

60. The reasons offered by the Defendants for taking the adverse personnel actions against Mr. Kendrick are pretextual.

61. Mr. Katz made statements to and about Mr. Kendrick's conditions that reflect a disdain for his physical limitations.

62. The USPS did not treat Mr. Kendrick as they had treated similarly-situated employees who had not engaged in protected activity.

63. The USPS, at all times relevant hereto, had actual and constructive knowledge of the conduct of its managerial employees as described above.

64. The Defendant retaliated against Mr. Kendrick in violation of Title VII, 42 U.S.C.

§ 2000e-3(a).

65. The Defendants retaliated against Mr. Kendrick in violation of the FMLA, 29 U.S.C.§ 2615.

66. The Defendants retaliated against Mr. Kendrick in violation of the Rehabilitation Act.

67. Plaintiff is informed and believes, and based thereon alleges, that in addition to the practices enumerated above, the USPS, and its agents, have engaged in retaliatory practices against him which are not yet fully known. At such times as said retaliatory practices become known to him, Plaintiff will seek leave of court to amend this Complaint in that regard.

## COUNT IV
### RACE DISCRIMINATION

68. Plaintiff repeats and realleges the allegations of paragraphs 1 through 66, inclusive, and incorporates the same by reference as though set forth fully herein.

69. Mr. Kendrick is an African American.

70. Mr. Kendrick suffered the following adverse employment actions: denial of light duty work/position; denial of reasonable accommodation; denial of FMLA leave; and termination.

71. The reasons offered by the USPS for taking the adverse employment actions against Mr. Kendrick are pretextual.

72. Mr. Kendrick's race motivated the USPS to take the adverse employment actions described herein.

73. The USPS, at all times relevant hereto, had actual and constructive knowledge of the conduct of its managerial employees.

74. Defendant discriminated against Mr. Kendrick due to his race in violation of Title VII, 42 U.S.C. § 2000e-16(a).

75. The acts alleged in paragraphs 67-73 constitute continuing violations under Title VII, the Rehabilitation Act, and the FMLA.

76. Plaintiff is informed and believes, and based thereon alleges, that in addition to the practices enumerated above, Defendant, and their agents, have engaged in discriminatory practices against him which are not yet fully known. At such time as said discriminatory practices become known to him, Plaintiff will seek leave of court to amend this Complaint in that regard.

## PRAYER FOR RELIEF

77. As a direct and proximate result of Defendant's actions, Mr. Kendrick has experienced and will continue to experience pain and suffering, and extreme and severe mental anguish and emotional distress.  He has incurred and will continue to incur medical expenses for treatment and for other incidental expenses.  Therefore, for each Count alleged in this Complaint, Mr. Kendrick is entitled to medical expenses and compensatory damages, where permitted.

78. As a further direct and proximate result of Defendants' violations of law, Mr. Kendrick has been compelled to retain the services of counsel and has thereby incurred legal fees and costs.  Therefore, for each Count alleged in this Complaint, Mr. Kendrick requests that attorneys' fees be awarded, pursuant to 42 U.S.C.§ 2000e-5(k), 42 U.S.C. § 12205, 29 U.S.C. § 2617(a)(3), , and Section 505 of The Rehabilitation Act.

WHEREFORE, Plaintiff prays for the following relief:

a. An order declaring the acts and practices complained of herein violate Title VII of the Civil Rights Act of 1964, the Rehabilitation Act, and the Family and Medical Leave Act;

b. An order restraining and permanently enjoining Defendant's illegal acts and practices;

c. Reinstatement and restoration of seniority, leave and benefits

d.  Back wages and salary, bonuses, and benefits;

e.  Plaintiff's costs, and past and future pecuniary losses;

f.   Equitable and restorative relief, including but not limited to front pay.

g.  General, special, liquidated, treble and compensatory damages for all claims;

h.  Pre-Judgment and post-judgment interest;

i.  Plaintiff's attorney's fees and expert witness fees;

j.  All other relief as the Court may deem just and proper.

Case 1:06-cv-00122-GK    Document 1    Filed 01/23/2006    Page 15 of 16

## JURY DEMAND

Plaintiff demands a trial by jury for all claims and issues triable by jury.

                                                  Respectfully submitted,

Dated: January 23, 2006                  By:_____

                                                  Harvey Kendrick
                                                  2301 Penbrook Circle
                                                  Landover, MD 20785

                                                  *Pro se*